### Abbie Hobson, Appellee, v. St. Louis, Springfield & Peoria Railroad, Appellant.

1. CARRIERS—*prima facie case.* Evidence that plaintiff was a passenger on defendant's car when an accident happened and injury resulted to her, is sufficient to make a *prima facie* case.

2. CARRIERS—*evidence.* Where the evidence is undisputed that plaintiff was thrown violently against the seat in front of her so as to injure her side and cause her to become sick, a verdict finding defendant guilty of negligence will be sustained though defendant's witnesses testified the car came to a slow and easy stop.

3. EVIDENCE—*testimony of physician who examined plaintiff a few days before the trial.* Testimony of a physician, who has attended plaintiff for several months, regarding her physical condition a few days before the trial, is properly admitted.

4. EVIDENCE—*testimony of physician as to cause of injury and the pain suffered.* Testimony of plaintiff's physician as to the cause of the injury and the pain suffered is not prejudicial when corroborative and accumulative of facts and conditions established by evidence of defendant.

5. DAMAGES—*when verdict is sustained.* Where plaintiff, a healthy woman able to carry on her business, teaching school and vocal music, is injured in an accident on defendant's electric railway so that she is nervous and unable to teach school without great exertion and exhaustion, a verdict for $3,110.00 is not so large as to show passion, prejudice or disregard of the evidence by the jury.

6. CONTINUANCE—*when not error to deny motion for.* Where plaintiff is allowed at the close of her evidence, to amend her declaration by increasing the *ad damnum* from $3,000.00 to $5,000.00 there is no error in refusing to continue the case, where defend-

Hobson v. St. Louis, Springfield & Peoria R. Co., 180 Ill. App. 84.

ant's affidavit is uncertain and indefinite and shows no particular reason why additional preparation is required.

Appeal from the Circuit Court of Madison county; the Hon. WIL-LIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 23, 1913. Rehearing denied May 29, 1913.

RICHARD YATES and H. C. DILLON, for appellant; GEORGE W. BURTON and GEORGE W. BLACK, of counsel.

WARNOCK, WILLIAMSON & BURROUGHS, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

A trial was had in this case in the Circuit Court of Madison county, which resulted in a verdict for plaintiff and defendant appeals.

On September 16, 1911, appellant was engaged in operating an electric railway from Springfield to Granite City, Illinois, and on that date appellee was a passenger, for hire, of appellant, from Staunton to Edwardsville. Appellant's train consisted of two cars operated by electricity. About two miles south of Hamel on said road the trolley wire was broken and down for a distance of some three hundred to four hundred feet; the ends of the wires had been picked up and tied to a pole on the side of the track and tied in such manner, as some of the witnesses described it, as to form an angle, and extended across the track. Upon arriving at the place of the broken wire the conductor and motorman concluded that they would coast across this break in the wire and in attempting to do so the trolley wire that had been tied up, in some manner struck the stove pipe projecting out of and above the roof of the rear end of the car communicating electric current to the pipe and to the stove in the car and caused a flash of light in the rear end of the car. Very shortly thereafter, if not immediately, as described by the witnesses of the appellee,

the car gave a lurch and was suddenly stopped and the appellee was violently thrown on to the back of the seat in front of her, causing the seat to turn over and in this manner appellee was injured in the right side, which, as claimed by her, injured her liver, dislocated her kidney and caused her to vomit and for a while, at least, she was very sick.

There is a conflict in the testimony of the witnesses for appellee and appellant as to the speed at which the car was being operated, and the manner in which it stopped. Appellee's witnesses say it was operated at a good rate of speed and all of a sudden stopped very abruptly, and others say it stopped suddenly with a great crash, while appellant's witnesses testified the car was running slowly, that it stopped in an easy manner and that there was no crash or jerking connected with the stopping of the car.

It is disclosed by the evidence that the appellee was engaged in teaching school; that she had graduated in music and was preparing herself for a music teacher; that the injury she received so affected her breathing as to partially disable her from singing as she had prior thereto, and that she was weak, nervous and unable to perform her duties as she had formerly done and that such injuries were permanent. Doctor Wall, at the suggestion of counsel for appellant, was permitted to and did treat the appellee for several weeks, but later on Doctor Wall was discharged and Doctor Ferguson, family physician of appellee, was called in and treated her up to the time of the trial, and there is some conflict in the evidence of the physicians as to her permanent injury.

It appears from the evidence that prior to this injury the appellee was a stout, healthy woman and able to endure a great deal of work, and as she says, she was able to sing almost an unlimited time without being tired but after the injury she was nervous, weak and unable to perform her daily work of teaching or singing, except with great effort.

The declaration, after the formal averments, alleges that, "Two miles southwesterly from said station of Hamel aforesaid, the said car in which she was so riding then and there operated by and in control of said defendant, was violently and suddenly stopped, by means and in consequence whereof the plaintiff was then and there thrown to, upon and against portions of said car, towit, seat and floor, by means and in consequence whereof she was stunned, wounded and crushed, the ligaments and muscles of her abdomen were bruised and strained and certain organs of her body, towit, her liver and ovaries were bruised and injured to such an extent that the same and also her right kidney were permanently injured and the functions thereof impaired, and her body in and about such organs was then and there otherwise wounded and crushed and also by reason of the shock of so being thrown and injured, her nervous system was and continues to be greatly deranged and shattered," and then alleges that by reason of such injury she was sick, disordered and permanently injured, and suffered great pain, and continued to be hindered and prevented from attending to and transacting her usual affairs of business, and has especially been hindered and prevented from continuing and completing her education in vocal music, and of gaining a livelihood by means thereof.

At the conclusion of the trial a verdict was rendered in favor of plaintiff for $3,110.

It is claimed by appellant that the appellee has failed to prove the allegations of her declaration, that she was thrown and injured by reason of the violent and sudden stopping of the car, by a preponderance of the evidence, and that because of such failure she is barred from a recovery herein. There is a conflict of evidence upon this question. Appellee's witnesses, some of them say, "It was going at a good rate of speed and all of a sudden stopped very abruptly;"

88    APPELLATE COURTS OF ILLINOIS.

Hobson v. St. Louis, Springfield & Peoria R. Co., 180 Ill. App. 84.

another said, "The lights went out and the car stopped as short as it could; we were all thrown hither and thither." Another witness says, "The car stopped suddenly, with a great crush." And appellee says, "All of a sudden there was an awful jerk and I had a sensation of a gone feeling and I didn't know any more until they were giving me water, or something." A witness for appellant stated, "It stopped in an easy manner, easy way." The motorman says, "Car drifted slowly, four or five miles an hour, very slow. I brought car to a stop by applying air; car just came down to an ordinary stop. An ordinary stop is to apply your air and release it just as the car stops motion and leaves no jar." The conductor said, "The car coasted under this trolley break without any power, speed probably four or five miles an hour, coasted about four hundred feet, four pole lengths. Car then came to a stop in the usual way, easy like way. Not enough to jar any one." While it is not disputed by counsel for appellant that the testimony of witnesses for appellee does show that the car stopped suddenly, yet he says it is not shown by a preponderance of the evidence, that the witnesses for appellant were equal in number to those of appellee and had superior knowledge upon this question, they were not so much excited as witnesses for appellee and for this reason their testimony should be accepted in preference to that of appellee. This is a question purely within the province of the jury. They were the judges of the weight to be given to the testimony of the several witnesses, and this court has no power to disturb their verdict upon this ground, unless it appears that such verdict was manifestly against the weight of the evidence. So far as it is disclosed by this record, the witnesses had equal opportunities to see and know what occurred, and in addition to this, the evidence is undisputed that the appellee was thrown so violently against the seat in front of her that it caused the seat to turn over, and she was

thrown against the seat with such violence as to injure her side and cause her to vomit and become very sick, and we cannot say that the verdict of the jury should be disturbed for this reason. It certainly appears from this evidence that appellee was a passenger, that an accident happened and injury resulted, which of itself is sufficient to make a *prima facie* case. It is said in the case of *Chicago City R. Co v. Carroll*, 206 Ill. 323: " 'By the law they [railroads] are bound to the utmost diligence and care, and are liable for slight negligence. Proof that defendant was a passenger, the accident, and the injury, make a *prima facie* case of negligence. This is done, and the burden of explaining is thrown upon the plaintiffs.' The rule above quoted has, from the time of its announcement to the present time, been adhered to by an unbroken line of decisions in this State."

It is next contended that the court erred in admitting much of the testimony of Doctor Ferguson. Counsel takes the position that because an examination of appellee was made but a few days before the trial that practically all of his testimony should be excluded, under the doctrine laid down in the case of *Chicago & E. I. R. Co. v. Donworth*, 203 Ill. 192. The facts in that case developed that the patient was not at that time under the treatment of the physician and never had been under his care, and that the examination was made three years after the injury, and solely for the purpose of testifying in that case, and that in his opinion that the hearing of appellee was injured, but such opinion was obtained principally by a test of holding a watch at some distance from the ear of the patient and then asking him if he heard the ticking of the watch. This case, however, is easily distinguished from that one, in this, that Doctor Ferguson had been treating the appellee for more than three months prior to this trial, and at least two months before this suit was commenced, and as we read his testimony, such history of the case as was given by

Doctor Ferguson was obtained from her when he first commenced treating her, and in the regular course of treatment. It is true that only a few days before the trial he made a physical examination of the appellee and at that time discovered that her right kidney had been displaced and was what he termed a "movable kidney;" but this was not ascertained from anything that she said or did but from the examination that he made and the conditions that he found to exist. We think the evidence of Doctor Ferguson, under the conditions here shown to have existed, comes within the rule laid down by our Supreme Court in the case of *Chicago City Ry. Co. v. Bundy,* 210 Ill. 39, and *City of Chicago v. McNally,* 227 Ill. 14.

It is further argued by counsel that the declaration of appellee to Doctor Ferguson as to the cause of the injury, and the pain suffered, were very improper and tended to enhance appellee's damages. An examination of the testimony of Doctor Wall, witness for appellant, gives fully the statements made by appellee to him while he was treating her, as to the cause of the injury, and that the principal symptom was pain, which he learned from her, and that he treated her for these pains from time to time; and while he says that he discovered no injury to the kidney or to the organs of the voice, he does, however, give many of the symptoms and conditions that is said by Doctor Ferguson to have existed. The testimony of Doctor Wall was offered by appellant and is fully corroborative as to the symptoms given by Doctor Ferguson, and as the testimony of Doctor Ferguson was corroborative and accumulative of facts and conditions which were established by the evidence of appellant, we are unable to see how the error, if it were such, could be prejudicial to the appellant. *Greinke v. Chicago City Ry. Co.,* 234 Ill. 564.

It is insisted by counsel that the damages awarded to appellee in this case were excessive. The appellee, prior to her injury, was a stout, healthy woman, able

to endure a large amount of work and to carry on her business of teaching school and vocal music with ease and comfort to herself, and enjoyed the pleasures of health without even a day's sickness to mar it, but since the injury she has been depressed, nervous, unable to teach her school without great exertion and exhaustion, and if the testimony of her physician, her mother and herself is to be relied upon, as to her condition, then we are not able to say that the jury was not warranted in finding a verdict for the amount that it did, and as has often been said by the court, this is a matter largely within the discretion of the jury, and unless the amount determined was of such magnitude as to show passion, prejudice or disregard of the evidence by the jury, then the court would not be warranted in disturbing it, and we do not feel that the verdict should be disturbed on that account.

Again, it is said that the court erred in permitting appellee to amend her declaration by increasing the *ad damnum* from $3,000 to $5,000 at the close of plaintiff's evidence, and refusing to continue the case upon the affidavit made by appellant. Before the commencement of the trial appellee was permitted to amend her declaration by adding the words, "and also her right kidney," thereby adding to the injuries set forth in her declaration. This amendment was agreed to by counsel for defendant, and the affidavit filed by them relates, as we take it, solely to this amendment and not to the increasing of the *ad damnum*, as they say they were "not prepared to meet any serious trouble to the kidney, and especially is not prepared and could not prepare through the exercise of all due diligence to meet the charge of injury to the kidney to the extent involved in this last said amendment to the declaration." We are unable to see any reason why it would require any more preparation to meet a charge of the injuring of the kidney to the extent of $5,000 than of $3,000, especially when no particular reason is shown by the affidavit why such additional

preparation is required, and we think the affidavit is otherwise uncertain and indefinite and that the court was fully warranted in refusing to continue the case.

It is further contended that the court erred in refusing appellant's instructions Nos. one, four, and five. While we are not prepared to say that these instructions lay down the law correctly but if they do then the propositions announced in these instructions are covered by the given instructions Nos. eight and ten. We are of the opinion that the court was liberal in the instructions given to appellant.

After a careful examination of this record, and the law, we are not able to say that any reversible error was committed in the trial of this case, and the judgment is affirmed.

*Judgment affirmed.*